UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| QUAINE NAKITIA FINLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CV-304 |
| ) | (Phillips) |
| UNIVERSITY OF TENNESSEE ) | |
| KNOXVILLE DEPARTMENT ) | |
| OF UNIVERSITY HOUSING, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff, Quaine Finley, a former employee in the University of Tennessee's Department of University Housing, brings this action, acting *pro se*, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging race discrimination and retaliation. In particular, plaintiff alleges: (1) that the University's failure to hire him as a Craft Supervisor constituted race discrimination; (2) that the University transferred him to a new work location in retaliation for filing a complaint with the University's Office of Equity and Diversity (OED); and (3) that the University terminated him in retaliation for filing complaints with the OED and the Equal Employment Opportunity Commission (EEOC).

The University has moved for summary judgment on the following grounds: (1) Finley did not meet the minimum qualifications for the Craft Supervisor position, therefore, he cannot establish a *prima facie* case of race discrimination; (2) his transfer

cannot support a *prima facie* case of retaliation because his transfer did not constitute an adverse employment action and because the University's reorganization preceded any allegedly protected activity; (3) his termination cannot support a *prima facie* case of retaliation because the termination decision preceded his complaint to the EEOC, and he cannot establish a causal connection between his OED complaint and his termination; and (4) Finley cannot rebut the University's legitimate, non-retaliatory reason for his termination with any evidence of pretext.

## **I.  Background**

In 1997, the University hired Finley, an African-American, as a Buyer's Assistant in the Department of University Housing. On May 15, 2007, the Department made a personnel requisition to the Office of Human Resources for a Craft Supervisor III. The position required a minimum of 4-6 years supervisory experience in maintenance or construction. Finley applied for the Craft Supervisor position, but had no supervisory experience in maintenance or construction. Because Finley did not meet the minimum qualifications for the position, the Office of Human Resources did not forward his application to the Department for further consideration. The Department hired Kirk Johnson for the Craft Supervisor position. Johnson's application shows that he had more than six years of supervisory experience in maintenance and construction.

On October 10, 2007, Finley filed a complaint with OED. Ken Stoner, Assistant Vice Chancellor for Student Affairs and Executive Director of University Housing was not notified about Finley's complaint, nor was he sent a copy of the complaint by OED.

On November 1, 2007, the Department submitted a reorganization plan to Human Resources. As part of the reorganization, the Department eliminated three positions, including the Buyer's Assistant position held by Finley. None of the employees were terminated, and Finley was reassigned to the position of Senior Secretary-Administrative Support Assistant in Strong Hall. Dr. Stoner met with Finley on November 14, 2007 to inform him about the reorganization. During that meeting, Finley told Dr. Stoner that he had filed a complaint with OED. Prior to that meeting, Dr. Stoner testified that he was unaware that Finley had filed an OED complaint and that he had never seen a copy of the complaint. Dr. Stoner further testified that he finalized the reorganization plan without any knowledge about Finley's OED complaint; thus, the complaint did not influence his decisions with respect to the reorganization. Finley's transfer did not result in any reduction in his salary or benefits. Dr. Stoner testified that the Buyer's Assistant position and the Senior Secretary position are classified as Administrative Assistant positions, and have comparable levels of responsibility.

Finley transferred into the Senior Security position in Strong Hall on November 26, 2007, and received three hours of training on his new responsibilities. On December 4, 2007, Elizabeth Hall, Director of Strong Hall and plaintiff's supervisor advised plaintiff to "please be careful about saying things like 'It's a guy thing' to RAs or me or calling people 'sweetie' or talking down to anyone in a similar matter. We are all equals here." On December 17, 2007, Hall sent an email to Finley clarifying her previous communication as a "formal oral warning." Finley responded to Hall with an email accusing her of being unprofessional, inappropriate and inconsiderate.

3

On December 14, 2007, the Department received an email from a female student. The student reported an encounter with Finley in Strong Hall. According to the student's email, Finley told her, "You are going to be one of those snow bunnies, soaking up all the sun, getting tan, wearing your bikini, working out to get a body, and going down the slopes. You could wear those white furry boots like a Sweden girl wears." The student later alleged that Finley said, "You are young and hot and you should go out."

On December 17, 2007, the Department received an email from Hall. According to Hall, plaintiff injected himself into a conversation between Hall and a female student. Hall recounted the incident as follows:

> I told [the student] I had to go to a Physical Therapist because I have recurrent subluxation (dislocation) of my shoulders. I told her that in fact all of my joints were "double jointed" and I am able to put my legs behind my head, do splits, etc. Quaine then said something to the effect of "I want a wife like you," completely changing the tone of my conversation with [the student] to something sexual.

As a result of these complaints, Dr. Stoner placed Finley on paid administrative leave while he investigated the allegations. Dr. Stoner interviewed several students and staff members as part of his investigation into the allegations of misconduct by Finley. He testified that his investigation substantiated the allegations about Finley and revealed other inappropriate comments.

On January 11, 2008, Dr. Stoner sent a letter to Finley notifying him that the University planned to terminate him for inadequate work performance. The letter asserted the following grounds for terminating plaintiff:

4

1. Continually disrupting the work environment including, but not limited to: complaints regarding trivial matters and criticisms of supervisors; attempting to place blame on others for minor problems; as well as making inappropriate comments towards women; and/or

2. Failure to follow instructions, including, but not limited to: continually making inappropriate comments and innuendos that make residents and staff uncomfortable after being directed to cease and desist. You were advised on December 4, 2007 via email regarding "inappropriate comments" and "after hours calls." However, you failed to heed your supervisor's directive and were again told to stop the "inappropriate comments" via an email message sent on December 17, 2007; and/or

3. Insubordination to include, but not limited to, spreading unsubstantiated rumors about Mike West and Jerry Adams to undermine their authority as well as accusing your immediate supervisor, Elizabeth Hall, of spreading such rumors (RE: Mike West and Jerry Adams) and then in a December 17, 2007 email telling her "in the future, please do not bring these non-work related topics or any sex related topics when having conversations with me. I feel you are being hurtful and bearing false witness to some rumors that may or may not be true about other University staff." It is not appropriate, in fact it is insubordinate to first make false accusations about your supervisor, and then to send an email to your supervisor telling her she is "... unprofessional, inappropriate, and inconsiderate" and also telling her in the same communication to quit discussing "... non-work related or any other sex related topics ... with me."

Dr. Stoner's letter advised Finley that the University would hold his pre-termination meeting on January 18, 2008.

On January 15, 2008, Finley filed a charge of discrimination with the EEOC. He requested that the University reschedule his pre-termination meeting for January 29, 2008. At no time during the pre-termination meeting with Dr. Stoner did Finley allege that he thought his termination was based on his race, nor did he mention that he had filed a

5

charge of discrimination with the EEOC. Following that meeting, the University terminated Finley effective January 30, 2008. Dr. Stoner testified that he made the decision to terminate Finley for the reasons set forth in his pre-termination letter. Finley did not appeal his termination.

## II. Standard for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Phillip Morris Cos. Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

#### A. Race Discrimination

Finley claims race discrimination based on the University's decision not to hire him for the Craft Supervisor position. As plaintiff presents no direct evidence of race discrimination, his claim depends upon circumstantial evidence and will be analyzed under the *McDonnell-Douglas* burden shifting framework. *Anthony v. BTR Automotive Sealing Sys. Inc.,* 339 F.3d 506, 514 (6th Cir. 2003). In a failure to promote case, the plaintiff must prove (1) that he is a member of a protected class; (2) that he applied for, and did not receive a job; (3) that he was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job. *Id.* at 515.

Here, the posting for the Craft Supervisor position required a minimum of 4-6 years supervisory experience in maintenance or construction. Finley's application did not

7

state that he had any supervisory experience in maintenance or construction; therefore, the University did not forward his application to the Department for further consideration. Moreover, Finley conceded at his deposition that he had no supervisory experience in maintenance or construction. In contrast, Kirk Johnson, the candidate chosen for the position, had more than six years of supervisory experience in maintenance and/or construction. The undisputed evidence shows that Finley did not meet the minimum criteria for the Craft Supervisor position, and therefore he cannot show that he was qualified for the position. Because he was not qualified for the job, he cannot establish a *prima facie* case of race discrimination and his claim will be **DISMISSED WITH PREJUDICE.**

## B. Retaliatory Transfer

Finley next claims that the University transferred him to the position of Senior Secretary in Strong Hall as retaliation for filing his OED complaint. In order to establish a *prima facie* case of retaliation, he must show (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

First, the University argues that Finley's transfer did not constitute an adverse employment action. To be actionable,

> a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A

8

> materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). Reassignment of job duties is not automatically actionable. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71.

The Department's reorganization impacted three employees, none of whom lost their employment. Finley's position as Buyer's Assistant was eliminated and he was transferred to the Senior Secretary position in Strong Hall. The transfer did not impact his income or benefits. The record shows that although some of his duties changed, his level of responsibility essentially remained the same. Both positions were classified as Administrative Support Assistant positions. Finley concedes that he experienced no reduction in pay or benefits as a result of the transfer. He makes no complaint about increased hours, increased responsibilities, or diminished prestige resulting from the transfer. Because Finley has produced no evidence that his reassignment constituted a materially adverse employment action, he cannot establish a *prima facie* case of retaliation with regard to his transfer and his claim will be **DISMISSED WITH PREJUDICE.**

In addition, Finley fails to present evidence that the decision-maker knew of his protected activity at the time of the reorganization. On October 10, 2007, Finley filed his complaint with OED. However, there is no evidence that OED notified Dr. Stoner about the complaint. Dr. Stoner testified that he was unaware of the complaint at the time the Department finalized the reorganization, and in fact, he did not learn about Finley's complaint until plaintiff informed him during a meeting on November 14, 2007. Plaintiff admitted in his deposition that he has no evidence, other than his own suspicion, that Dr. Stoner was aware of his complaint when Dr. Stoner finalized the reorganization plan. Because Finley has produced no evidence that Dr. Stoner was aware of his protected activity at the time of the reorganization/transfer, he cannot a *prima facie* case of retaliation with regard to his transfer and his claim will be **DISMISSED WITH PREJUDICE.**

## C. Retaliatory Termination

Finally, Finley contends that his termination constituted retaliation based on two instances of protected activity: (1) his OED complaint filed on October 10, 2007; and (2) his charge of discrimination filed with the EEOC on January 15, 2008. First, the EEOC charge cannot support a claim of retaliation because the record shows that Finley filed the EEOC charge after his termination was already in progress. Following the investigation by Dr. Stoner, the University issued a pre-termination letter to Finley dated January 11, 2008 containing specific grounds supporting his termination and scheduling a meeting in which Finley could challenge the termination. On January 15th, four days after Dr. Stoner had made the decision that his conduct justified termination, Finley filed his EEOC charge. Therefore, plaintiff's protected activity could not have influenced his termination. *See*

10

*McElroy v. Philips Med. Sys. N. Am. Inc.,* 127 Fed.Appx. 161, 170 (6th Cir. 2005) (affirming summary judgment on retaliation claim where discharge was contemplated and underway before employee engaged in the alleged protected activity); *Saffold v. Special Counsel Inc.*, 147 Fed.Appx. 949 951 (11th Cir. 2005) ("When an employer makes a tentative decision *before* protected activity occurs, the fact that an employer proceeds with such a decision is not evidence of causation").

Second, Finley has failed to show a causal connection between the OED complaint and his termination. The record shows that the University terminated Finley because of a series of incidents in which he made inappropriate sexual comments to female employees and staff members. After these incidents came to the attention of Dr. Stoner, he placed Finley on paid administrative leave while he conducted an investigation. The investigation substantiated the allegations against Finley and revealed other inappropriate comments. As a result, on January 11, 2008, Dr. Stoner wrote a pre-termination letter to Finley identifying the grounds for termination. Finley has presented no evidence of a retaliatory intent and at his deposition, he acknowledged that he has no evidence that the University terminated him for filing a complaint with OED. Accordingly, the court finds that Finley has failed to establish a causal connection between his OED complaint and his termination.

Even assuming, *arguendo*, that Finley could establish a *prima facie* case of retaliatory discharge, the University has proffered a legitimate, non-retaliatory reason for his termination. If a plaintiff establishes a *prima facie* case, the burden shifts to the

11

employer to articulate a legitimate, non-retaliatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times. *Weigel v. Baptist Hosp.,* 302 F.3d 367, 377-78 (6th Cir. 2002). Once the defendant has articulated a non-retaliatory reason for its decision, the plaintiff must show that the employer's proffered explanation is merely a pretext for discrimination. *Texas Dept of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff can establish pretext in three ways: he may show either (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motive his discharge; or (3) that the reason was insufficient to motivate his discharge. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Here, the University has articulated a legitimate, non-retaliatory reason for terminating Finley – the suggestive comments to female students and staff members. Upon a review of the record, the court can find no material facts showing the University's non-retaliatory explanations to be pretextual. Finley has presented no evidence of pretext other than his own subjective speculation and conjecture. "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986); *Roberts v. Novartis Animal Health US, Inc.,* 2008 WL 4982579 (M.D.Tenn. Nov. 19, 2008) (finding no pretext "where the plaintiff offers a lot of speculation and innuendo, but nothing that would cause a reasonable jury to reject the defendant's explanation for the termination decision"). Because Finley has produced no evidence that the University's decision to terminate his employment was motivated by retaliation for filing complaints with the OED and the EEOC,

12

and because he has not shown that the University's stated reason for his termination – his suggestive comments to female students and staff – was a pretext for retaliation, Finley's claim for retaliatory discharge will be **DISMISSED WITH PREJUDICE.**

### IV.  Conclusion

For the reasons discussed above, defendant University's motion for summary judgment [Doc. 13] is **GRANTED**, whereby this action shall be dismissed in its entirety.

The trial scheduled for May 22, 2012 is **CANCELLED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge

13

Case 3:09-cv-00304-TWP-CCS   Document 18   Filed 04/17/12   Page 13 of 13   PageID #: 208